**UNITED STATES of America, Appellee,**

v.

**Carlos Flores VARGAS, Defendant-Appellant.**

**No. 178, Docket 34632.**

United States Court of Appeals, Second Circuit.

Argued Sept. 30, 1970.

Decided May 26, 1971.

City, of counsel), for defendant-appellant.

Before FRIENDLY, Chief Judge, and DANAHER * and HAYS, Circuit Judges.

PER CURIAM:

Appellant Vargas was indicted in the District Court for the Southern District of New York along with one Campina. Count 1 charged Campina alone with violating 21 U.S.C. §§ 173 and 174 on August 19, 1969, by receiving etc. 4.16 grams of cocaine, knowing the same to have been illegally imported. Count 2 charged Campina and Vargas with violating the same statute on the same day with respect to 820 grams of cocaine. Count 3 charged that the 820 gram transaction violated 26 U.S.C. §§ 4705(a) and 7237(b) because of sale without the required written order form. Count 4 charged them with conspiring from August 1 to November 10, 1969, to violate 21 U.S.C. §§ 173 and 174 with respect to cocaine. After trial began before Judge Bryan without a jury, Campina pleaded guilty to Counts 1, 2 and 3, and the court severed and declared a mistrial with respect to him on Count 4. The judge found Vargas guilty on Counts 2, 3 and 4, and pronounced seven year concurrent sentences on each count.

The Government's case was presented through Special Agent Rivera, whose testimony was bolstered by that of surveilling agents. In the early afternoon of August 19, 1969, Rivera was in the apartment of an informer. Campina entered, and the informer introduced Rivera as interested in the purchase of narcotics. Rivera asked for a sample. Campina went to a bar where he met Vargas, with whom he had earlier been seen in the neighborhood. He then returned to the apartment and produced a small vial containing a powder, later proved to have been 4.16 grams of cocaine hydrochloride. Rivera inquired about getting large amounts. Campina said he

Walter J. Higgins, Jr., Asst. U. S. Atty. (Whitney North Seymour, Jr., U. S. Atty., S.D.N.Y., and James T. B. Tripp, Asst. U. S. Atty., of counsel), for appellee.

Richard Levy, New York City (Milton Adler, Legal Aid Society, New York

* Senior Circuit Judge of the District of Columbia, sitting by designation.

could provide up to four kilos every 20 days, that the cocaine was the best in the market, and that it had just arrived from Chile. They agreed to meet later that afternoon on a street corner where Agent Rivera would buy a kilo for $12,000. When Rivera arrived, Campina entered his car carrying a bag which contained underwear. He directed Rivera to drive two blocks to meet a friend who was holding the narcotics. On arrival Campina walked a short distance and approached Vargas who was seated on a park bench. Vargas handed him the inevitable brown paper bag and received the gray one in exchange. When Campina returned to the car, Rivera saw tissue-like papers containing white powder in the brown bag; the powder was subsequently determined to weigh nearly a kilo and to contain cocaine hydrochloride. Upon a signal from Rivera, the surveilling agents arrested Campina, who attempted to flee, and Vargas. At the United States Attorney's office, Vargas denied ever having seen Campina prior to his arrest.

Vargas, a native of Chile, testified he had entered the United States as a stowaway in June 1969, had come to New York City on August 1, and had met Campina at a bar. He explained his first encounter with Campina on August 19 on the basis that Campina had said he could be found in that area if Vargas should return to New York. Vargas claimed the late afternoon meeting was at Campina's request. He said the gray bag contained his personal belongings and had been continuously in his possession; he denied having had anything to do with the brown bag.

■ Vargas' attack on his convictions on Counts 2 and 4 on the basis of Turner v. United States, 396 U.S. 398, 418–419 & n. 39, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970), handed down after the trial of this case, has been largely drained of force by United States v. Gonzalez, 442 F.2d 698 (2 Cir. 1970), adhered to on rehearing in banc, 442 F.2d 705 (2 Cir. 1971).[1] The only asserted distinction warranting comment is that *Gonzalez* involved somewhat more than a kilogram of pure cocaine whereas the near kilogram in this case was only 42% pure. This is still so "much larger" than Turner's 14.68 grams, 5% pure, see 396 U.S. at 401, 419 n. 39, 90 S.Ct. 642, and so unlikely to have been the product of numerous small thefts from legitimate domestic sources, that the *Gonzalez* analysis is applicable. See footnotes 6, 7, 8 and 10, 708, 709 of 442. If we thought otherwise, we would simply remand the case to Judge Bryan with directions to make a finding concerning knowledge of illegal importation without reliance on the statutorily permitted inference. Since the evidence of such knowledge in this case is quite substantial, it is unlikely that Vargas would fare any better.

■ Even if we should be wrong in our interpretation of *Turner*, Vargas was properly convicted on Count 3. Counsel argues that if the allegedly unconstitutional "presumption" had not been in the case, Vargas might not have taken the stand and given testimony whose apparent falsity could have contributed to the judge's convicting him on Count 3. This has more ingenuity than reality. The record shows that defense counsel knew the "presumption" was under serious attack in the *Turner* case, which had already been argued. On the other hand, the Government's evidence made conviction on Count 3 a practical certainty unless some doubt could be cast upon it, and no one but Vargas seems to have been in a position to do this. We therefore unhesitatingly affirm the conviction on Count 3.

The conviction on all three counts is affirmed.

1. This opinion, prepared before the court decided to rehear *Gonzalez in banc,* has necessarily been withheld pending decision on such rehearing.